# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Respondent, | § | Crim. No. 3:16-CR-01 |
| | § | Civil No. 3:19-CV-120 |
|     v. | § | |
| | § | |
| BENJAMIN DOUGLAS GUIDRY, | § | |
|     Movant. | § | |

## <u>UNITED STATES' MEMORANDUM IN OPPOSITION TO § 2255 MOTION</u>

The waiver provision of Benjamin Guidry's plea agreement bars the majority of the claims in his § 2255 motion. In light of that fact, Guidry seeks to avoid the waiver by asserting that ineffective assistance of counsel rendered the waiver (and his guilty plea) unknowing and involuntary. That argument is meritless. Guidry has not met his burden of providing competent evidence establishing both that counsel performed deficiently and that such performance caused him prejudice. His ineffective assistance of counsel claims and challenge to the voluntariness of his guilty plea should be denied and his remaining claims dismissed as barred by the waiver provision of his plea agreement.

## I. Guidry is charged with sexual exploitation and child pornography crimes carrying a maximum sentence of 80 years' imprisonment.

While investigating Guidry for income tax fraud, investigators (pursuant to valid search warrants) discovered substantial evidence that Guidry had been sexually assaulting at least one minor and had created and possessed child pornography. *See* DE 43 at 7-14 (PSR ¶¶ 17, 19-40).[1] Among other evidence, investigators recovered a video from Guidry's iPhone which "came into focus as a male was pushing his penis into [a] female's vagina." *Id*. at 11 (PSR ¶ 35).

The girl in the video was crying and "her arm . . . was pushing against the male." *Id*. She could be "heard in a quiet voice saying things such as, 'No, I don't want this;' 'I'm being raped;' 'I'm terrified, don't let me do this;' [and] 'Stop it, Ben.'" *Id*. "Throughout the video the male could be heard whispering, 'You want it;' 'This isn't rape;' 'Stop it;' 'Spread your legs;' and 'It will last a little longer.'" *Id*.

The investigation revealed that Guidry drugged and sexually assaulted at least one minor victim, created video recordings of sexually

---

[1] Citations in the format "DE___" refer to numbered docket entries in 3:16-CR-01 with pagination as noted in the document's ECF header; citations to "PSR ¶___" refer to the presentence report prepared on May 9, 2017.

assaulting that victim, drugged a second victim,[2] and attempted to surreptitiously record the second victim in the bathroom on at least two occasions. *Id.* at 7-14 (PSR ¶¶ 17, 19-40).

A grand jury indicted Guidry on two counts of sexually exploiting children and two counts of possessing child pornography. DE 10. The sexual exploitation counts each carried a mandatory minimum sentence of 15 years' imprisonment and a statutory maximum of 30 years. 18 U.S.C. § 2251(a) & (e); *see also* DE 11. The child pornography counts each carried a maximum term of ten years' imprisonment. 18 U.S.C. § 2252A(a)(5)(B) & (b)(2); *see also* DE 11. Under the indictment, Guidry therefore faced a potential maximum of 80 years' imprisonment.

## II. Guidry pleads guilty pursuant to a plea agreement that caps his maximum sentence 15 years below the maximum in his indictment in exchange for his waiver of his rights to pursue an appeal or § 2255 motion.

After Guidry had been arrested and indicted for sexually exploiting minors and possessing child pornography, the separate investigation of his income tax crimes concluded. *See* DE 23. Guidry requested (and this

---

[2] The circumstances under which Guidry drugged the second victim strongly suggest that he intended to sexually assault her but was prevented from doing so because another person intervened while the victim was incapacitated by the drugs. *See* DE 43 at 13 (PSR ¶ 39).

Court granted) multiple continuances of the trial date in the sexual exploitation case in order to allow Guidry to pursue "a global resolution" of those charges and the anticipated criminal tax charges. *See* DE 23, 24, 25, 26, 27, 28.

The parties ultimately entered into a plea agreement under which Guidry would plead guilty to charges contained in a superseding information, rather than his initial indictment. *See* DE 30, 35. The superseding information dropped the two child pornography counts (with their 10-year maximum sentences) and added a single count of making a false claim against the United States (arising from Guidry's tax fraud) which carried a maximum term of imprisonment of five years. *See* DE 30; 18 U.S.C. § 287.

Because the superseding information did not include the two child pornography counts from the indictment, Guidry's plea agreement reduced his total potential imprisonment to 65 years, rather than the 80-year aggregate statutory maximum he faced under the indictment. *Compare* DE 11 *with* DE 31.

Guidry pleaded guilty to the charges in the superseding information pursuant to a plea agreement in which he waived his right to appeal or

4

collaterally attack his conviction and sentence, except for an ineffective

assistance of counsel claim. DE 35. Guidry's waiver states:

> 5.    Defendant is aware that Title 28, United States Code, § 1291, and Title 18, United States Code, § 3742, afford defendant the right to appeal the conviction and sentence imposed. Defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or to collaterally attack a conviction or sentence after the judgment of conviction and sentence has become final. *Defendant knowingly and voluntarily waives the right to appeal or to collaterally attack the conviction and sentence imposed, except that defendant does not waive the right to raise a claim of ineffective assistance of counsel* on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event the defendant files a notice of appeal following the imposition of sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

*Id.* at 3-4 (emphasis added).

In the plea agreement, Guidry also agreed that he was aware

that:   (1) each of the child exploitation counts carried a maximum

term of imprisonment of 30 years and a mandatory minimum term

of 15 years; (2) the fraud count carried a maximum term of 5 years'

imprisonment; (3) Guidry's sentence had not yet been determined;

and (4) the court could sentence Guidry up to the statutory

maximum term of imprisonment on each count and could order

those sentences to run consecutively. *Id.* at 2, 4-5, 7-8. The agreement states:

> 6.    In agreeing to these waivers, *defendant is aware that a sentence has not yet been determined by the Court*. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States, or the Probation Office is a prediction, not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. . . . Defendant understands that, although the Court must consult the U.S. Sentencing Guidelines and must take them into account when sentencing defendant, the Court is not bound to follow the U.S. Sentencing Guidelines nor sentence defendant within the calculated guideline range.

> 11.    . . . Defendant understands . . . that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, *or should the court order any or all of the sentences imposed to run consecutively*, defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all of the obligations under this plea agreement.

*Id.* at 4-5, 7-8 (emphasis added).

In the agreement, Guidry further acknowledged that "all waivers contained in the Agreement [we]re made in exchange for the concessions made by the United States in th[e] Plea Agreement." *Id.* at 5. Among such

concessions, the United States agreed that it would "not further criminally prosecute [Guidry] in the Southern District of Texas for offenses arising from conduct charged in the Superseding Indictment." *Id.* at 6. That concession allowed Guidry to avoid the additional potential 15 years' imprisonment he had faced under the child pornography charges included in his original indictment.

In other concessions, the United States agreed that Guidry's "relevant conduct for purposes of sentencing" on the fraud count was "between $250,000.00 and $550,000.00" in loss and that the district court should order a total of $201,454 in restitution on that count. *Id.* The United States further agreed that, at the time of sentencing, it would not oppose a net three-offense-level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b) if, *inter alia*, Guidry "accept[ed] responsibility as contemplated by the U.S. Sentencing Guideline." *Id.* at 5-6.

During his guilty plea proceeding, Guidry confirmed, under oath, that he had an opportunity to read and discuss the plea agreement with his lawyer and he understood the agreement's terms. DE 61 at 4, 6-7. He also confirmed that none of his medications would affect his ability to

understand the proceedings or "in any way affect [his] ability to plead guilty." *Id.* at 5-6. Guidry also confirmed that:

- No one had made any promise or assurance that was not listed in the plea agreement in order to induce him to sign the agreement;

- No one had threatened or attempted to force him in any way to plead guilty;

- He was pleading guilty of his own free will because he believed he was guilty; and

- No one had made any promises "or assurances of any kind" to get him to plead guilty, "other than the promises and assurances that are contained in the Plea Agreement[.]"

DE 61 at 6-8.

## III. Guidry's statutory maximum sentence establishes his advisory guidelines range and this Court varies downward, sentencing him to 600 months' imprisonment.

The Probation Department prepared a presentence investigation report (PSR) which calculated Guidry's total offense level to be 43. DE 43 (PSR ¶¶ 52-85). Normally an offense level of 43 would carry an advisory guidelines range of imprisonment for life (regardless of a defendant's criminal history score). Because, however, the cumulative statutory maximum penalty for the three counts in the superseding information was 65 years' (*i.e.*, 780 months') imprisonment, pursuant to U.S.S.G.

§ 5G1.2(b), Guidry's advisory guidelines range was 780 months' imprisonment. *Id.* (PSR ¶¶120-22).

Guidry's counsel filed objections to the PSR's offense level for the child exploitation offenses. DE 42. Counsel argued that Guidry's offense level should not have been increased four levels under U.S.S.G. § 2G2.1(b)(4)(A), which applies where "the offense involves material that portrays sadistic or masochistic conduct or other depictions of violence," or five levels under U.S.S.G. § 4B1.5(b)(1), which applies, *inter alia*, where a defendant being sentenced for "a covered sex crime . . . engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. §§ 2G2.1, 4B1.5. After hearing argument during sentencing, this Court sustained Guidry's objection to the four-level "sadistic or masochistic conduct" increase under U.S.S.G. § 2G2.1(b)(4)(A), but overruled Guidry's separate objection to the five-level increase for a pattern of prohibited sexual conduct pursuant to U.S.S.G. § 4B1.5. DE 62 at 8-13. Notwithstanding the sustained objection, Guidry's offense level remained at 43, largely because of the operation of U.S.S.G. § 3D1.4 (applying a "units" analysis to certain guidelines calculations) on Guidry's offense level. *See* DE 62 at 14-15.

The Government urged the court to impose the advisory guidelines (and statutory maximum) sentence of 780 months' imprisonment. *Id.* at 20-22, 28. Guidry sought a downward variance, requesting a sentence of 200 months or less. *Id.* at 28. This court sentenced Guidry to 600 months' imprisonment, comprising 270 months as to each child exploitation count and 60 months on the fraud count, all to be served consecutively. DE 53; DE 62 at 28.

In explaining the sentence, this Court told Guidry, "with all due respect, sir, what you did was absolutely horrific. . . . it pains me to say this, but you're the worst kind of predator." DE 62 at 29. This Court further explained, "these children trusted you. They placed everything that they had in your hands and you completely abused that trust. . . . . [I]f you're willing to do this to people, to young kids that you know and supposedly love . . . I shudder to think what you could do to people and victims that you don't know." *Id.*

At sentencing Guidry did not express any surprise at the advisory guidelines range he faced, nor did he indicate in any way that counsel (or anyone else) had assured him of a lower sentence. *See* DE 62. Guidry also

did not move to withdraw his guilty plea after the PSR was issued, during sentencing, after sentencing, or at any other point.

## IV. The Fifth Circuit dismisses Guidry's appeal as barred by his waiver.

Guidry appealed to the Fifth Circuit arguing that that: (1) his counsel was constitutionally ineffective for advising him to accept the plea agreement, and (2) his 600 month sentence was substantively unreasonable. *United States* v. *Guidry*, 707 F. App'x 801 (5th Cir. 2017) (unpublished). The court reviewed the validity of Guidry's waiver de novo and concluded that "Guidry knowingly and voluntarily agreed to the appeal waiver, making the appeal waiver enforceable." *Id.* at 802. The court, therefore, dismissed Guidry's appeal, without prejudice to his pursuing his ineffective assistance of counsel claim in motion under § 2255. *Id.*

## V. Guidry's § 2255 motion is meritless.

Guidry argues that his counsel provided constitutionally ineffective assistance that rendered his guilty plea unknowing and involuntary by "all but promis[ing]" him an offense level of 35 and by advising him to plead guilty pursuant to a plea agreement that purportedly did not confer

a benefit on Guidry, but that did include waivers of Guidry's rights to pursue an appeal or a collateral attack. As set forth below, Guidry has not met—and cannot meet—his burden to show both deficient performance and prejudice. Accordingly, his ineffective assistance claim fails.

Guidry also asserts multiple other purported grounds for relief, arguing that U.S.S.G. § 2G2.1 is unconstitutional and that various evidence was illegally seized. *See* DE 74-1 at 15-19, 21-30. Because those are not ineffective assistance of counsel claims, Guidry's waiver bars them. *See Guidry*, 707 F. App'x at 802. The Fifth Circuit has already held that Guidry's waiver was knowing and voluntary and bars claims based on grounds other than ineffective assistance of counsel. *Id.* Guidry may not relitigate that conclusion here. *See United States* v. *Webster*, 392 F.3d 787, 791 (5th Cir. 2004) (an issue is raised and decided on direct appeal, that issue may not be relitigated in a motion pursuant to § 2255); *see also United States* v. *Goudeau*, 512 Fed. App'x. 390, 393-94 (5th Cir. 2013) (unpublished) (prior dismissal based on appellate waiver held to be law

of the case). Accordingly, Guidry's non-ineffective assistance-of-counsel claims must be dismissed.[3]

### a. Applicable Law—Section 2255 and Ineffective Assistance of Counsel

### i. Section 2255

Motions pursuant to 28 U.S.C. § 2255 may only seek relief for particular types of errors. *See United States* v. *Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). A movant may raise a jurisdictional or constitutional claim, however, a motion under section 2255 "may not do service for an appeal." *United States* v. *Frady*, 456 U.S. 152, 165 (1982). If the claim asserted in a section 2255 motion could have been raised on direct appeal, but was not, the issue is considered to be procedurally defaulted; before a movant can obtain relief pursuant to section 2255, he must show cause for his failure to raise the issue on appeal and "actual prejudice" resulting from the error.[4] *Cervantes*, 132 F.3d at 1109.

---

[3] By seeking dismissal of these grounds as barred by Guidry's waiver, the United States does not intend to waive any other applicable argument or defenses, including that the claims are procedurally defaulted, not cognizable, substantively meritless, or otherwise subject to denial. If this Court should find that Guidry's waiver does not bar the claims, the United States respectfully requests 30 days to submit supplemental briefing regarding the validity of these claims.

[4] If a movant can establish that his counsel was constitutionally ineffective in failing to raise the claim previously, that showing will satisfy the "cause and prejudice"

Conversely, where an issue is raised and decided on direct appeal, that issue may not be relitigated in a motion pursuant to § 2255. *United States* v. *Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *United States* v. *Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). A movant may also raise certain other claims under section 2255 that could not have been raised in a direct appeal, however to obtain relief on such a claim the movant must establish that allowing the alleged error to go uncorrected "would result in a complete miscarriage of justice." *Cervantes*, 132 F.3d at 1109.

Because Guidry is represented by counsel, he is not entitled to the less stringent "liberal construction" afforded pro se litigants. *Beasley* v. *McCotter*, 798 F.2d 116, 118 (5th Cir. 1986). Moreover, even a pro se litigant is required to provide sufficient facts in support of his claims. *United States* v. *Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Accordingly, regardless of whether a § 2255 litigant is represented or proceeds pro se, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical

standard. *See United States* v. *Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992).

issue in his pro se petition . . . to be of probative evidentiary value." *Ross* v. *Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

A 2255 motion may be resolved without an evidentiary hearing where the files, the motion and record of the case conclusively show that no relief is appropriate. *United States* v. *Santora*, 711 F.2d 41 (5th Cir. 1983). If the record is adequate to fairly dispose of the allegations, the court need inquire no further. *United States* v. *Smith*, 915 F.2d 959, 964 (5th Cir. 1990).

### ii. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the familiar two-prong analysis set forth in *Strickland* v. *Washington*, 466 U.S. 668 (1984). Under that standard, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was objectively unreasonable, that is, outside the broad range of what is considered reasonable assistance. *United States* v. *Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). He must also show that the deficient performance led to an unfair and unreliable conviction or sentence. *Id.*

Counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Premo* v. *Moore*, 562 U.S. 115, 121 (2011). To overcome that presumption, a petitioner must "show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 121-22 (internal quotations omitted). "[T]he standard for judging counsel's representation is a most deferential one." *Id.* at 122. "The question is whether an attorney's representation *amounted to incompetence* under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (emphasis added).

If the movant fails to prove one prong, it is not necessary to analyze the other. *United States* v. *Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." (quoting *Strickland*)); *Armstead* v. *Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

While "a guilty plea may be invalid if induced by defense counsel's unkept promises . . . a defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath." *Cervantes*, 132 F.3d at 1110. Accordingly, "a defendant may seek habeas relief on the basis of alleged promises, though inconsistent with representations she made in open court when entering her guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *Id.* "If the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue." *Id.* "If, however, the defendant's showing is inconsistent with the bulk of her conduct or otherwise fails to meet her burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary." *Id.*

**b.  Guidry's self-serving and unsupported claim that counsel advised him he faced a lower sentence does not satisfy his burden to prove deficient performance.**

Guidry fails to satisfy any of the prerequisites set forth in *Cervantes*. Rather than providing any affidavits from "reliable third parties" showing that counsel *promised* him a particular sentence, Guidry primarily offers his own self-serving, bald assertions. *Cervantes*, 132 F.3d at 1110. While Guidry has submitted a declaration from his mother, that document does not reflect that counsel made any unkept promises. *See* DE 74-4. Rather, Guidry's mother simply recounts that counsel said he believed that Guidry "*could* receive a sentence between 15-25 years" if he pleaded guilty and that "it would be in his best interest to take the plea because the courts w[ould] look favorably if he t[ook] responsibility" while, chose to go to trial, "the courts w[ould] feel that he did not take responsibility for his actions and . . . could add additional time to his sentence." *Id.* (emphasis added). That statement includes no improper promise. Indeed, Guidry fails to prove that such advice was below a reasonable standard of competence.

Further, to the extent that Guidry seeks to argue that counsel promised him a particular sentence or sentencing range, that claim "is inconsistent with the bulk of h[is] conduct [and] otherwise fails to meet h[is] burden of proof in the light of other evidence in the record" and therefore "an evidentiary hearing is unnecessary" before denying his motion. *Cervantes*, 132 F.3d at 1110. Guidry's "testimony [at rearraignment] and the plain terms of the plea agreement clearly refute [his] allegations that h[is]attorney had promised h[im] a lower sentence." *Id.* at 1111. "The plea agreement is . . . clear, and unambiguous." *Id.* Guidry's "colloquy with the court [during rearraignment] expressly contradicts the existence of any promises or agreements not contained in the plea agreement." *Id.*

"It is well established that [a defendant's] '[s]olemn declarations in open court carry a strong presumption of verity' " or truthfulness. *United States* v. *Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (internal citation and quotation omitted). Accordingly, courts afford "great weight to the defendant's statements at the plea colloquy." *United States* v. *Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). Guidry's recent claims that counsel promised him a lower sentence cannot overcome the presumption that

his sworn statements during his guilty plea were true. Guidry's claim, accordingly, should be denied without further proceedings.

### c. Guidry's conclusory assertion that he would have gone to trial cannot carry his burden of proving prejudice.

Even where a defendant carries their burden of establishing deficient performance—which Guidry fails to do here—"[t]o avoid summary dismissal and obtain a hearing" on a claim that ineffective assistance of counsel rendered a plea involuntary, a movant must "allege a non-frivolous prejudice claim." *United States* v. *Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (en banc). To meet that burden, a defendant must both allege and "show a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Guidry fails to do so.

A defendant must "affirmatively prove prejudice." *Strickland*, 468 U.S. at 693. Conclusory allegations are insufficient. *See Day* v. *Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009). Determining prejudice in the context of a guilty plea requires a case-by-case examination of the totality of the evidence against the defendant. *Lee* v. *United States*, 137 S. Ct. 1958, 1966 (2017). "[P]ost hoc assertions from a defendant about

how he would have pleaded but for his attorney's deficiencies," are insufficient to establish prejudice and a court "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

Guidry fails to point to any contemporaneous evidence suggesting that he was inclined to go to trial. To the extent he makes any prejudice argument he bases it on the incorrect assumption that, if he had chosen to go to trial, he would face conviction only on the charges contained in the superseding information. That is wrong.

Guidry was initially charged in an indictment that carried an aggregate maximum sentence of 80 years' imprisonment for his sexual exploitation of minors and child pornography crimes. At that time, he was facing further prosecution for his tax crimes that had not yet been charged. Guidry's plea agreement—which the United States entered into in exchange for Guidry's waivers—reduced Guidry's potential maximum sentencing exposure by at least fifteen years. Guidry offers no evidence—and nothing in the record otherwise suggests—that the United States would have been willing to drop the child pornography charges against him if he had elected to go to trial rather than pleading guilty.

Moreover, if Guidry had elected to go to trial, he would have faced further prosecution and sentencing for his tax crimes. He offers no evidence that such a trial would have involved a single count with a five-year maximum sentence. Thus, to prove prejudice, Guidry must show that he was inclined to proceed to trial, despite facing a potential sentence of more than 80 years in prison rather than pleading guilty with a guarantee that he would receive a sentence of 65 years or less. He cannot do so.

Guidry "has "not pointed to any contemporaneous evidence in the record showing that he had an inclination to withdraw his guilty plea and proceed to trial once his sentencing exposure was outlined in the PSR," much less that he would have opted to go to trial and possibly face an even higher sentence in light of the fact that his statutory maximum determined his advisory guidelines range pursuant to U.S.S.G. § 5G1.2(b). *United States* v. *Peralta-Castro*, No. CR H-14-356-07, 2019 WL 2343677, at *6 (S.D. Tex. June 3, 2019) (unpublished). Further, Guidry "proposes no viable defense to the charges against him, which were supported on substantial evidence outlined in the factual basis for the Plea Agreement." *Id.*at *7.

"Because [Guidry] does not dispute that the factual basis underlying his guilty plea was true, he does not otherwise establish that, but for any deficiency on his counsel's part, there was a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial," particularly in light of the fact that such a decision would have subjected him to a substantially higher maximum sentence and advisory guidelines range. *Id.* Accordingly, he fails to meet his burden of showing prejudice. His motion should be denied.

### d. Guidry's counsel did not perform deficiently by recommending that he accept the plea agreement.

Guidry asserts that his counsel performed deficiently by recommending that he plead guilty pursuant to the plea agreement containing appellate and collateral attack waivers because, purportedly, he obtained nothing in return for those waivers. That is wrong.

As outlined above, in exchange for the waivers in his plea agreement, Guidry obtained the dismissal of the child pornography charges against him, a minimum 15-year reduction in the maximum sentence he faced, and a limit of his sentencing exposure for his tax crimes to a single five-year-maximum count. Counsel did not perform

deficiently by advising Guidry to obtain those benefits as part of a plea agreement containing a waiver provision. That reduction in Guidry's statutory maximum sentence was particularly valuable in light of the fact that the sentencing guidelines would recommend a sentence of imprisonment for life if such a sentence were available. Thus, Guidry's aggregate statutory maximum sentence established his advisory guidelines range.

A within-guidelines sentence—that is, a sentence at the statutory maximum—was also a realistic possibility here, where the evidence showed that Guidry had committed "absolutely horrific" crimes against minors. DE 62 at 29. Guidry repeatedly raped one minor victim and filmed himself doing it while she begged him to stop. DE 43 at 11 (PSR ¶ 35). He continued to film himself sexually assaulting her over a period of years. He targeted at least one other minor victim for abuse.

Under these circumstances, counsel did not perform deficiently by recommending that Guidry accept a plea agreement that limited his sentencing exposure. Guidry has not shown and cannot show that counsel was unreasonable in concluding that such an agreement would yield a more favorable sentence than Guidry would have received if he had

refused to accept responsibility, been convicted at trial, and appeared for sentencing facing a maximum aggregate sentence of 80 years (or more). His ineffective assistance of counsel claim is meritless.

### e. Guidry fails to show any other basis for finding that his guilty plea was unknowing or involuntary.

#### i. Guidry's claims regarding his mental health and medication are meritless.

Guidry intimates that his mental health condition and medications he was taking at the time he pleaded guilty may have rendered his guilty plea unknowing and involuntary. In support of that claim, Guidry relies on a post-hoc assessment prepared by physician years after his guilty plea based solely on the doctor's review of certain medical records, Guidry's PSR and addendum, and Guidry's objections to the PSR. DE 74-5. Based on that limited set of materials, the doctor equivocally concludes that Guidry "was likely significantly impaired by a depressive illness and medication side effects at the time he elected to plead guilty" and that these purported impairments "*may well have resulted* in him electing to pursue a defensive strategy that was not in his best interest." DE 74-5 at 4 (emphasis added).

In rendering that opinion, the physician did not consider Guidry's guilty plea transcript. During the plea proceeding, Guidry advised the court that was bipolar and had "severe anxiety and severe depression." DE 61 at 5. He then confirmed—under oath and subject to penalty of perjury—that the medication he was taking would not prevent him from understanding the plea proceedings and would not in any way affect his ability to plead guilty." *Id.* at 5-6.

After Guidry's sworn statements, this Court addressed his counsel who reported that he had no concern about Guidry's ability to enter a knowing and voluntary plea. *Id.* at 6. Counsel explained, "I have no concern at this time. *I've had Mr. Guidry professionally tested and evaluated by a doctor/psychologist and he is competent* and I'm satisfied in my own conversations that he understands the proceedings." *Id.* (emphasis added). This Court then engaged in a lengthy colloquy with Guidry to ensure that his guilty plea was knowing and voluntary and to ensure that he had reviewed and understood his plea agreement. *See Id.* at 6-19. Based on that colloquy and its firsthand interaction with Guidry during which it was able to assess his demeanor, this Court concluded that Guidry was "fully competent and capable of entering an informed

plea." *Id.* at 17. This Court further found that Guidry was "aware of the nature of the charges and the consequences of that plea" and that his plea was knowing and voluntary. *Id.*

Guidry's post-hoc physician's report cannot upset those conclusions. Guidry's repeated contemporaneous statements, under oath, that he was not impaired, that he fully understood the charges and the plea agreement, and that he was pleading guilty voluntarily, carry a strong presumption of truthfulness and are entitled to great weight. *United States* v. *Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001); *United States* v. *Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). That weight increases in light of the fact that the physician who assessed Guidry prior to his guilty plea appears to have offered no suggestion that he was unable to enter a knowing and voluntary plea.

Guidry has not provided this Court with the prior doctor's assessment. It is, nevertheless, reasonable to conclude that the prior doctor found Guidry competent to enter an informed plea. Indeed, the confirmation from Guidry's counsel, that, after having had Guidry examined, he believed him fully competent, confirms that the prior doctor found Guidry to be able to enter a knowing and voluntary plea. Further,

while Guidry's current physician quotes from the prior doctor's report at some length, none of those quotations indicate that the prior doctor concluded Guidry was unable to make an informed plea. *See* 74-5 at 2.

Moreover, even if this Court were to accept at face value the current report on which Guidry seeks to rely, it cannot meet Guidry's burden of showing that his plea was unknowing or involuntary. The report concludes only that Guidry's illness and medication "*may well have resulted in his electing to pursue a defensive strategy that was not in his best interest.*" *Id.* at 4 (emphasis added). That equivocal statement, which asserts only that Guidry might have chosen an unwise strategy, cannot carry his "heavy burden" to prove that his guilty plea was unknowing or involuntary, when he previously affirmed under oath that it was knowing an voluntary. *See United States* v. *Diaz*, 733 F.2d 371, 374 (5th Cir. 1984) (defendant bears heavy burden to show plea involuntary after contrary statement during guilty plea); *see also United States* v. *Nuckols*, 606 F.2d 566, 569 (5th Cir.1979) (same).

Moreover, as discussed above, Guidry's guilty plea provided him a substantial benefit. It lowered his maximum statutory sentence by at least 15 years. By doing so, it also lowered his advisory guidelines

sentence by at least 15 years. It did so under circumstances where the heinous facts of the case made a sentence at or near the statutory maximum a realistic possibility. Guidry's plea also allowed him to accept responsibility for his crimes, which is recognized under the Sentencing Guidelines (and in practice) as a mitigating factor at sentencing. In short, Guidry fails to show that pleading guilty pursuant to the plea agreement was irrational, unknowing, or involuntary.

### ii. Guidry's suggestion that he believed he faced a statutory maximum term of 30 years is meritless.

Seeking to bolster his claim that his guilty plea was unknowing, Guidry appears to suggest that he believed he faced a maximum aggregate sentence of 30 years. *See* DE 74-1 at 9, 15. The record conclusively establishes that any such claim is meritless.

Guidry appears to premise his argument on a dubious reading of the guilty plea transcript. When pleading guilty, Guidry was informed of the statutory maximum sentence applicable to each count of conviction (30 years for each of the sexual exploitation counts and 5 years for the fraud count). DE 61 at 9. Without explaining his argument, Guidry appears to assert that because this Court did not explicitly say, "and

those sentences could be imposed consecutively," Guidry believed he faced a maximum of 30 years' imprisonment. *See* DE 74-1 at 9, 15. The record conclusively refutes that claim.

Guidry's plea agreement explicitly referred to the possibility that this Court could sentence Guidry "up to the maximum established by statute" and could order "any or all of the sentences imposed to run consecutively," and that if it did so, Guidry would remain bound by his plea agreement. DE 35 at 7. When he pleaded guilty, Guidry was, thus, aware that he faced the possibility of consecutive sentences.

Guidry's conduct reinforces that conclusion. After the PSR was released recommending a guidelines sentence of 65 years (*i.e.*, 780 months), Guidry did not seek to withdraw his guilty plea or communicate to this Court in any other way that he had pleaded guilty believing he faced a maximum of 30 years. Similarly, at sentencing, despite ample opportunity to address this Court, Guidry never indicated that he was surprised to be facing a possible sentence of more than 30 years. Those facts underscore that Guidry was aware of the potential penalties he faced when he pleaded guilty. His current attempt to undo that plea should be rejected.

## VI. Conclusion.

The United States respectfully requests that this Court enter an order: (1) denying Guidry's ineffective assistance of counsel claims and challenge to the voluntary and knowing nature of his plea because the record conclusively establishes that he is not entitled to the relief he seeks; and (2) dismissing Guidry's other claims as barred by the waiver in his plea agreement. Further, because reasonable jurists could not disagree with the dismissal or denial of the Motion, no certificate of appealability should issue. *See United States* v. *Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

Respectfully submitted,

RYAN K. PATRICK
UNITED STATES ATTORNEY

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

By: s/ Jason Smith
Jason Smith
Assistant United States Attorney
Attorney for Respondent
1000 Louisiana St., Suite 2300
Houston, TX 77002
SDTX No. 1690793
(713) 567-9102

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing motion was electronically filed with the United States District Court for the Southern District of Texas on June 7, 2019, and was served on Guidry's counsel of record via this Court's ECF system.

/s/ Jason Smith
Jason Smith
Assistant United States Attorney